

FILED

OCT 16 2019

Clerk, U.S District Court
District Of Montana
Missoula

| | |
|---|---|
| CHAD BEIERLE,<br><br>            Plaintiff,<br><br>vs.<br><br>CHS, INC.,<br><br>            Defendant. | CV 19–137–M–DWM<br><br>OPINION<br>and ORDER |

In August 2019, Plaintiff Chad Beierle filed seven nearly identical lawsuits against Missoula businesses alleging violations of Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, *et seq.*[1] As explained below, the present action is dismissed with leave to amend pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## BACKGROUND

For the purposes of the present analysis, the factual allegations in Beierle's complaint are accepted as true. *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). Beierle has primary lateral sclerosis with neuromuscular disorder,

---

[1] *See Beierle v. Fugli, LLC*, CV 19-127-M-DWM; *Beierle v. Taco Treat of Great Falls*, CV 19-129-M-DWM; *Beierle v. KFC Montana*, CV 19-130-M-DLC; *Beierle v. Orange Town Pump, Inc.*, CV 19-131-M-DLC; *Beierle v. Muralt's Inc.*, CV 19-132-M-DLC; *Beierle v. Chaffee Legacy, LLC*, CV 19-136-M-DLC.

which is "a rare, neuromuscular disorder that affects the central motor neurons and is characterized by painless but progressive weakness and stiffness of the muscles of the legs, progressing to affect the arms and muscles at the base of the brain." (Doc. 1 at ¶ 3.) As a result, he uses a walker "and is substantially limited to performing one or more major life activities including, but not limited to, walking, standing, grabbing, tight grasping, and/or pinching or twisting of the wrist." (*Id.*)

Beierle visited the Defendant CHS, Inc. d/b/a Cenex Gas Store #1's ("CHS") location at 4570 N. Reserve Street in Missoula, Montana on July 29, 2019. (*Id.* at ¶¶ 4, 6.) During that visit, Beierle alleges he "was denied full and equal access to, and full and equal enjoyment of, the facilities, services, goods, privileges and accommodations." (*Id.* at ¶ 4.) He then identifies twenty-nine "violations" of the ADA:

> a) Failure to provide ADA compliant parking stall striping and markings, at several parking stalls throughout the subject property, in violation of 2010 ADAS and 2015 ABAAS Section 502.3.3.
>
> b) Failure to provide ADA compliant parking stall width clearances, at several parking stalls throughout the subject property, in violation of 2010 ADAS and 2015 ABAAS Section 502.2.
>
> c) Failure to provide ADA compliant access aisle striping and markings, at several parking stalls throughout the subject property, in violation of 2010 ADAS and 2015 ABAAS Section 502.3.3.
>
> d) Failure to provide ADA compliant access aisle, on the passenger side of the parking stall, at several parking stalls throughout the subject property, in violation of 2010 ADAS and 2015 ABAAS Section 502.2.

e) Failure to provide ADA compliant access aisle slope grading, at several parking stalls throughout the subject property, in violation of 2010 ADAS and 2015 ABAAS Section 502.4.

f) Failure to provide ADA compliant parking stall signage, at the designated parking stall, at several parking stalls throughout the subject property 502.6.

g) Failure to provide ADA compliant, safe, walkway, due, in part, to abrupt vertical edges and/or variations over 1/4 inch, at several areas throughout the walkway of the subject property, in violation of 2010 ADAS and 2015 ABAAS Section 303.2 and 303.3.

h) Failure to provide ADA compliant, secure main entrance doormat, in violation of 2010 ADAS and 2015 ABAAS Section 302.2.

i) Failure to provide ADA compliant transaction counters, at several areas throughout the subject facility, in violation of 2010 ADAS and 2015 ABAAS Section 904.4.1 and 904.4.2.

j) Failure to provide ADA compliant transaction counters clear floor space, at several areas throughout the subject facility, in violation of 2010 ADAS and 2015 ABAAS Section 305.3.

k) Failure to provide ADA compliant self-serve transaction counters height, at several areas throughout the subject facility, in violation of 2010 ADAS and 2015 ABAAS Section 904.4.1 and 904.4.2.

l) Failure to provide ADA compliant self-serve dispenser reach ranges, at several self-serve counters throughout the subject facility, in violation of 2010 ADAS and 2015 ABAAS Section 308.1.

m) Failure to provide ADA compliant, secure, floor mats throughout the subject facility, in violation of 2010 ADAS and 2015 ABAAS Section 302.2.

n) Failure to provide ADA compliant, transition to all point of sale, merchandise, and displays, throughout the subject facility, due, in part, to a change in elevation, at the south-west area of the subject facility, in violation of 2010 ADAS and 2015 ABAAS Section 303.3.

o) Failure to provide ADA compliant circulation aisles throughout the subject facility, in violation of 2010 ADAS and 2015 ABAAS Section 403.5.1.

p) Failure to provide ADA compliant restroom directional and informational sigange [sic], in violation of 2010 ADAS and 2015 ABAAS Section 216.8.

q) Failure to provide ADA complaint secure restroom door mat, in violation of 2010 ADAS and 2015 ABAAS Section 302.2.

r) Failure to provide ADA compliant lavatory clear floor space, due, in part, to an obstructing trash can, in violation of 2010 ADAS and 2015 ABAAS Section 606.2.

s) Failure to provide ADA compliant mirror height, in violation of 2010 ADAS and 2015 ABAAS Section 603.3.

t) Failure to provide ADA compliant soap dispenser height, in violation of 2010 ADAS and 2015 ABAAS Section 308.2.1.

u) Failure to provide ADA compliant clear floor space at the paper towel dispensers, in violation of 2010 ADAS and 2015 ABAAS Section 305.3.

v) Failure to provide ADA compliant paper towel dispenser height, in violation of 2010 ADAS and 2015 ABAAS Section 308.2.1.

w) Failure to provide ADA compliant urinal clear floor space, in violation of 2010 ADAS and 2015 ABAAS Section 605.2 and 605.3.

x) Failure to provide ADA compliant stall door self-closing mechanism, in violation of 2010 ADAS and 2015 ABAAS Section 604.8.1.2.

y) Failure to provide ADA compliant hook height, in violation of 2010 ADAS and 2015 ABAAS Section 308.2.1.

z) Failure to provide ADA compliant toilet clear floor space, in violation of 2010 ADAS and 2015 ABAAS Section 604.3.2.

aa) Failure to provide ADA compliant toilet seat cover dispenser height, in violation of 2010 ADAS and 2015 ABAAS Section 308.1.

bb) Failure to provide ADA compliant toilet flushing handle location, in violation of 2010 ADAS and 2015 ABAAS Section 604.6.

cc) Failure to provide ADA compliant toilet paper dispenser location, in violation of 2010 ADAS and 2015 ABAAS Section 604.7.

(*Id.* at ¶ 17.) However, the Complaint does not explain how, if at all, these alleged deficiencies impacted him during his July 29, 2019 visit.

## ANALYSIS

"[F]ederal courts are required sua sponte to examine jurisdictional issues such as standing." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (quoting *Bernhardt v. Cty. of L.A.*, 279 F.3d 862, 868 (9th Cir. 2002)). Even though CHS filed an answer, (Doc. 6), "[t]he existence of Article III standing is not subject to waiver," *Chapman*, 631 F.3d at 954.

An action may be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) if a plaintiff lacks standing under the "case-or-controversy" requirement of Article III. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* The plaintiff, as the party

invoking federal jurisdiction, has the burden to establish subject matter jurisdiction. *Id.* Where, as here, a case is at the pleading stage, the plaintiff cannot meet its burden through the assertion of bare legal conclusions, but rather "must clearly allege facts demonstrating each element." *Id.* (internal quotation marks and alteration omitted). That said, "the Supreme Court has instructed [courts] to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the Act." *Chapman*, 631 F.3d at 946 (9th Cir. 2011) (internal quotation marks omitted) (citing *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)).

Here, Beierle fails to adequately allege injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (internal quotation marks omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (internal quotation marks omitted). In the ADA context, this means that a plaintiff must allege that he has "personally suffered discrimination under the ADA on account of his disability." *Chapman*, 631 F.3d at 954. To do so, a plaintiff must state what barriers he encountered or exist in a place he plans to return and "how his disability was affected by them so as to deny him the 'full and

6

equal' access that would satisfy the injury-in-fact requirement." *Id.* Or, to put it another way, the plaintiff must "relate the alleged violations to his disability." *Id.* at 955.

The holding in the Ninth Circuit's *Chapman* decision is directly applicable here. *See* 631 F.3d at 954–55. In *Chapman*, the plaintiff's complaint outlined his disability and stated that he "encountered architectural barriers that denied him full and equal access" to the defendant's store. *Id.* at 954. The complaint then included an "Accessibility Survey" that identified alleged ADA violations "without connecting the alleged violations to Chapman's disability, or indicating whether or not he encountered any one of them in such a way as to impair his full and equal enjoyment of the Store." *Id.* Such is the case here. Similar to Chapman's "Accessibility Survey," Beierle's complaint merely includes a list of twenty-nine ADA violations. (*See* Doc. 1 at ¶ 17.) And, as was the case in *Chapman*, that list "does nothing more than perform a wholesale audit of the defendant's premises," which "cannot substitute for the factual allegations required in the complaint to satisfy Article III's requirement of an injury-in-fact." 631 F.3d at 955 (internal quotation marks). Because Beierle "does not even attempt to relate the alleged violations to his disability," his complaint is dismissed for lack of standing. *Id.*

## CONCLUSION

Accordingly, IT IS ORDERED that Beierle's complaint is DISMISSED. Beierle may file an amended complaint within twenty-one (21) days of the date of this order or show cause why the dismissal should not be with prejudice.

IT IS FURTHER ORDERED that the October 31, 2019 preliminary pretrial conference and associated deadlines, (*see* Doc. 8), are VACATED.

DATED this 16th day of October, 2019.

Donald W. Molloy, District Judge
United States District Court